Dennis Rasmussen (Bar # 153479)
Law Offices of Dennis Rasmussen
750 East Green Street, Suite 333
Pasadena, California 91101
(626) 683-8942
(888) 848-4570 FAX
dennisrasmussen@realestatelawcenter.org
Attorney for:
RACHEL VEGA

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RACHEL VEGA

          Plaintiff,

vs.

SPECIALIZED LOAN SERVICING and
DOES 1-100, Inclusive,

          Defendants.

Case No:  5:20-cv-00008-JGB-KK

**SECOND AMENDED
COMPLAINT (CORRECTED)**

[Honorable Jesus G. Bernal]

## <u>ALLEGATIONS</u>

1.      Plaintiff RACHEL VEGA, an individual, hereinafter "VEGA" is, and at all times relevant was, *sui juris* and the rightful and lawful owner of that certain real property located in the County of San Bernardino, State of California, and commonly known as: 14113 Woodland Drive, Fontana, California, 92337, the ("subject Property").

2.      SPECIALIZED LOAN SERVICING, hereinafter referred to as "SLS", was at all times relevant to this action a business entity licensed by the State of California.  At all times

relevant in this action, this Defendant purported to be authorized to conduct business within the State of California, and in fact, conducted business within the County of San Bernardino on a regular basis.  SLS has corporate headquarters at 8742 Lucent Blvd., Suite 300, Highlands Ranch, CO  80129 and their agent for service of process is United Agent Group, 4560 Admiralty Way, Marina Del Rey, CA 90292.

3..    Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants and all unknown persons claiming any legal or equitable right, title, estate, lien or interest in the Subject Property adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto, by such fictitious names.  Plaintiff will amend this Complaint to allege the true names and capacities when ascertained.

4.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned each of the Defendants sued herein were the agents, employees, partners, co-conspirators, successors or predecessors in interest and employers of the remaining Defendants and, in doing the things herein alleged, were acting within the purpose and scope of such agency, employment and/or conspiracy.  Plaintiff is further informed and believes and based thereon alleges that the acts and conduct herein alleged of each such Defendant were known to, authorized by and/or ratified by the other Defendants, and each of them.

5.    Whenever in this Complaint an act or omission of a corporate or business entity is alleged, said allegation shall be deemed to mean and include an allegation that the corporate or business entity acted or omitted to act through its authorized officers, directors, agents, servants and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by managerial officers or directors of the corporate or business entity, and that the act or omission was ratified by the officers and directors of the corporate or business entity.

**SECOND AMENDED COMPLAINT**

## CONSPIRING OFFICERS, EMPLOYEES AND AGENTS OF DEFENDANTS

6.    Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff as alleged herein.  In taking action to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings, each of the Defendants acted with an awareness of its primary wrongdoing and realized its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals and wrongdoing.

7.    Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise and engaged in a common course of conduct to accomplish the wrongs complained of herein.  The purpose and effect of the conspiracy, common enterprise and common course of conduct complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiffs by engaging in wrongful and fraudulent activities.  Defendants accomplished their conspiracy, common enterprise and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans and by taking steps and making statements in furtherance of their wrongdoing.  Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of and was aware of its overall contribution to and furtherance thereof.  Defendants' wrongful conduct acts include, inter alia, all of the acts that each of them is alleged to have committed in furtherance of the wrongful conduct complained of herein.

## JURISDICTION AND VENUE

8.    Pursuant to Code of Civil Procedure Section 392(a), venue is proper in this County because the Subject Property is located here.  Further, the transactions occurred within this County, the events transpired within this County, the parties and witnesses reside within this

**SECOND AMENDED COMPLAINT**

County, the evidence, including Defendant's business records, are located within this County, and the Defendants regularly conduct business within this County.

9.      Defendant engaged in business within the State of California related to the events which give rise to the instant lawsuit.  The subject events transpired within the State of California, SLS corresponded with Plaintiff via mail with addresses within the State of California, hence SLS  has "sufficient minimum contacts" with the State of California such that this Court's exercise of personal jurisdiction over SLS  "[does] not offend traditional notions of fair play and substantial justice."[1]

11.      Defendant SLS' refusal to comply with California foreclosure statutes creates liability on their part. Defendant's breach of their duty to Plaintiff under these circumstances is evidence that Plaintiff has a strong probability of prevailing on the merits.  Plaintiff argues that the Defendant has purposefully short-circuited the California Foreclosure statutes and the review process to offer available foreclosure options, so as to have an unimpeded path to foreclosure.

## FACTUAL BACKGROUND

12.      This action arises out of loan activity related to Plaintiff's home.  Plaintiff has at all relevant times been the rightful owner of the Subject Property.

13.      In approximately 2005, Plaintiff purchased the subject property for $350,000. Indymac provided the purchase mortgages, one loan in the amount of $281,405.00 (80% loan) and one for $52,823.00 (20% loan).  On or about April 14, 2006 Plaintiff refinanced these loans with HomeComings Financial Network, Inc., which provided two loans, one for $280,000.00 and one for approximately $62,000.00.

---

[1] *International Shoe Co. v. Washington*, ₁ 326 U.S. 310, 316 (1945).

**SECOND AMENDED COMPLAINT**

14.     In December 2016, CIT Bank, which had become the owner and servicer of the $62,000.00 loan (the 20% loan), sent Plaintiff an email that it had recorded a discharge and full reconveyance of this loan, a copy of this email has been filed with the court as an Exhibit to Plaintiff's Opposition to Dismiss so to fully disclose the source of Plaintiff's belief.

15.     On or about August, 2017, SLS began sending Plaintiff collection letters and billings for the $62,000.00 loan and $34,000.00 of interest and late fees, for a total of $96,164.00.  This 2017 billing by SLS took Plaintiff by great surprise as she justifiably relied upon the email sent to her from CIT Bank, which caused her to believe this debt had been discharged.

### FIRST CAUSE OF ACTION

### CONSTRUCTIVE FRAUD

### (Against SLS)

16.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though such have been fully set forth herein.

17.     Under California Civil Code Section 1573 it is unlawful for any party, through a misrepresentation of a material fact, to willfully obtain an advantage over another in a fiduciary/confidential/special relationship.  The California Civil Code prohibits constructive fraud where "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him."  Furthermore, constructive fraud is defined as "all acts, omissions, and concealments involving breach of equitable or legal duty, trust or confidence, and resulting in damage to another."

**SECOND AMENDED COMPLAINT**

18.    California Courts use the Biakanja six-part test to find the establishment of a confidential relationship. *Biakanja v. Irving* (1958) 49 Cal. 2d 647, 650.  This test establishes that a duty was owed by SLS:

a) the First Factor, the extent to which the transaction was to affect Plaintiff: In 2017 SLS created a confidential relationship with Plaintiff when they communicated to her that she could trust SLS to advise her how to prevent foreclosure based upon them claiming that she had defaulted on the approximate $62,000.00 second mortgage.  Preventing foreclosure does significantly affect Plaintiff.  Plaintiff notified SLS that under the regulations of the 2MP portion of the Making Home Affordable program, this second mortgage was required to be modified when her 80% first mortgage was modified.  Further, Plaintiff notified SLS that she had received an email from CIT Bank stating that it had discharged this debt.  SLS responded by instructing Plaintiff to apply for a modification in telephone conversations in the summer of 2017, which was helpful, but not responsive to why and how CIT claimed to have discharged this debt.  In addition to the verbal representiaons of reviewing the 20% second mortgage, SLS sent Plaintiff two letters, one dated August 14, 2017 and one dated August 20, 2017.  These letters were not signed by an individual and where the signature would normally appear at the end of each letter, SLS typed their name and address of a post office box in Littleton, Colorado.

b) the Second Factor, foreseeability of harm to Plaintiff:  SLS knew that if they negligently billed, managed and communicated with Plaintiff about this loan account, it would cause her harm.  More specifically SLS knew if they wrongfully began the foreclosure process, harm to Plaintiff would be certain;

**SECOND AMENDED COMPLAINT**

c) the Third Factor, the degree of certainty that Plaintiff was injured: the foreclosure activity by SLS is the cause of injury to Plaintiff.  Also, the wrongful billing including late fees and arrears that are not correct is a certain and specific harm to Plaintiff;

d)  the Fourth Factor, the closeness of the connection between Defendant's conduct and the injury suffered:  SLS's:

1) refusal to accurately and truthfully communicate the status of the loan account;

2) providing false billing and collection letters is misleading Plaintiff as to the status of the loan; and

3) violating the 2MP requirements of MHA;

are all proximate and direct causes of damage to Plaintiff;

e) the Fifth Factor, moral blame of Defendants:  Plaintiff's ability to protect the home from foreclosure is practically nil; and SLS holds all the cards to prevent foreclosure, and the lack of any bargaining power causes this factor to weigh in Plaintiff's favor.

f) the Sixth Factor, policy of preventing future harm:  The passing of new California Foreclosure statutes and the trend in case law holdings that lenders and servicers can be negligent in the foreclosure prevention process and review process demonstrates a rising trend to require lenders to deal fairly, reasonably and in good faith, with borrowers to prevent foreclosure.  *Alvarez*, 228 Cal. App. 4th 950, *Daniels v. UNITED Portfolio Servicing Inc.* (2016) 246 Cal App. 4th 1150.

19.     The standard for fraud is thus established by:

**SECOND AMENDED COMPLAINT**

(1) The existence of a special relationship between the parties:  SLS created a confidential relationship by their employees instructing Plaintiff to apply for a modification and foreclosure prevention alternative via telephone calls and sending letters.

(2) A false misrepresentation: Defendant SLS, in writing and verbally, instructed Plaintiff to apply for a modification of the second mortgage and agreed to investigate the validity of the discharge and reconveyance CIT Bank claimed in an email to Plaintiff that it had discharged.  SLS made a false representation by failing to review Plaintiff for a modification as represented in its correspondence mailed to Plaintiff and in its telephone conversations.

(3) In reference to a material fact: SLS's representations regarding the status of the subject loan were very material to Plaintiff.

(4) For the purpose of inducing the other part to rely on such representation:  SLS induced Plaintiff to rely on their representations by sending Plaintiff letters explaining that all foreclosure options would be explored; however, SLS has refused to allow Plaintiff to apply for the foreclosure alternatives they claim is available to Plaintiff.

(5) On which the other party did justifiably rely: Plaintiff is an unsophisticated and inexperienced borrower and SLS is an experienced lender/servicer.  Plaintiff was reasonable in relying on the representations and omissions and concealments of SLS.

6) Which resulted in damages or injury:  Defendant's conduct has caused:

**SECOND AMENDED COMPLAINT**

a) Plaintiff's mortgage arrears to unfairly grow; b) the loss of the ability to ever

obtain credit; c) the home being placed in foreclosure; and d) attorney fees to be

spent to right this wrong.

20.      Accordingly, as a result of all of the Defendant's deceitful and fraudulent conduct, Plaintiff has suffered, and will continue to suffer, compensatory, general and special damages in an amount to be determined according to proof.  Additionally, Defendant acted with malice, fraud and/or oppression and, thus, Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### PROMISSORY ESTOPPEL

### (Against SLS )

21.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though such have been fully set forth herein.

22.      Promissory estoppel affords the Plaintiff a remedy even where the Defendant received no consideration for their promises because Plaintiff relied upon the word and representations of the Defendant.  Where a party acts to its detriment in reliance on a promise, promissory estoppel affords that party a remedy.

23.      The elements of promissory estoppel are: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made that is (3) both reasonable and foreseeable; and (4) injury caused by the party's reliance on the promise. *Advanced Choices, Inc. v. State Dept. of Health Services* (2010) 182 Cal.App.4th 273, 284.  The standard for promissory estoppel is thus established by:

(1) The party to be estopped must know the facts: SLS knew that they had the

obligation to review Plaintiff for an available foreclosure option before

conducting any foreclosure activity.  SLS also knew that Plaintiff would be

wrongfully dispossessed of her home and would have a foreclosure on her credit

**SECOND AMENDED COMPLAINT**

score and financial records if they wrongfully denied Plaintiff the opportunity to be reviewed for a modification of the subject loan.

(2) The party must intend that his or her conduct will be acted on:  SLS intended that their offer of exploring foreclosure options would be acted upon by Plaintiff.

(3) The promise must be clear and unambiguous: SLS's promises were clearly communicated to Plaintiff in oral representations and in written communications.

(4) The party asserting the estoppel must be ignorant of the true state of the facts: Plaintiff was ignorant of the fact that the above representations and conducts by SLS were false.  Plaintiff did not know that the loan was accruing added fees for the years after she relied upon the email sent to her from CIT Bank.

(5) The party must rely upon the promise to his or her detriment: Plaintiff relied upon the absence of billing from SLS after she received an email from CIT Bank stating that the debt had been discharged.  Also, Plaintiff relied upon SLS's written offer to explore foreclosure alternatives before conducting a collection/foreclosure activity.

24.     As a direct, proximate and foreseeable result of Plaintiff's reliance on Defendant's clear and unambiguous representations, Plaintiff has suffered monetary damages including, but not limited to, running up unreasonable arrears, out of pocket expenses, damage to her FICO score, and legal and attorneys' fees to bring and maintain the instant lawsuit.  Plaintiff has suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

### THIRD CAUSE OF ACTION

**NEGLIGENCE**

**(Against SLS)**

25.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though such have been fully set forth herein.

**SECOND AMENDED COMPLAINT**

26.     The elements of a cause of action for negligence are well established. They are (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917 [50 Cal.Rptr.2d 309, 911 P.2d 496].)

27.     At all times relevant herein, SLS had a duty to exercise reasonable care and skill to not mishandle Plaintiff's mortgage account, to accurately bill her and to take reasonable steps to avoid foreclosure and not run up hidden damages.  Also, SLS had a duty to not make material misrepresentations, omissions or concealments about the status of Plaintiff's loan account and foreclosure prevention options.  SLS has a duty to exercise reasonable care to explore foreclosure alternatives and review competent evidence of Plaintiff's finances before conducting foreclosure.

28.     SLS owes Plaintiff a duty to exercise reasonable care in the handling of her loan, to accurately bill amounts due under the loan and in the review and processing of Plaintiff's competent evidence to prevent foreclosure.

29.     SLS breached their duty of care to Plaintiff by refusing to accurately bill her and to review competent financial evidence prior to conducting foreclosure activity. SLS breached their duty of care by violating the Second Lien Modification Program (2MP) under the 2009 Making Home Affordable (MHA) Guidelines.  SLS breached their duty of care to Plaintiff beginning in 2017 by not exploring foreclosure options as it they were so obligated.

30.     SLS is obligated to honor their duty, established by case law and statutes, to accurately and correctly bill Plaintiff on her loan accounts, not commit laches and run up damages and to complete a review accurately, timely and in good faith, before any foreclosure activity occurred.

**SECOND AMENDED COMPLAINT**

31.    The standard for this duty of care is established by:

a) the First Factor, the extent to which the transaction was to affect Plaintiff: In 2017 SLS created a confidential relationship with Plaintiff when they communicated to her that she could trust SLS to advise her how to prevent foreclosure based upon them claiming that she had defaulted on the approximate $62,000.00 second mortgage.  Preventing foreclosure does significantly affect Plaintiff.  Plaintiff notified SLS that under the regulations of the 2MP portion of the Making Home Affordable program, this second mortgage was required to be modified when her 80% first mortgage was modified.  Plaintiff had the right to rely on the email sent to her from CIT that represented that the subject debt had been discharged.  SLS responded by instructing Plaintiff to apply for a modification in telephone conversations in the summer of 2017.  In addition to the verbal representiaons of reviewing the 20% second mortgage, SLS sent Plaintiff two letters, one dated August 14, 2017 and one dated August 20, 2017.  These letters were not signed by an individual and where the signature would normally appear at the end of each letter, SLS typed their name and address of a post office box in Littleton, Colorado.

b) the Second Factor, foreseeability of harm to Plaintiff:  SLS knew that if they negligently billed, managed and communicated with Plaintiff about this loan account, it would cause her harm.  More specifically SLS knew that if they wrongfully began the foreclosure process, harm to Plaintiff would be certain;

c) the Third Factor, the degree of certainty that Plaintiff was injured: the foreclosure activity by SLS is the cause of injury to Plaintiff.  Also, the wrongful billing including late fees and arrears that are not correct is a certain and specific harm to Plaintiff;

**SECOND AMENDED COMPLAINT**

d)  the Fourth Factor, the closeness of the connection between Defendants' conduct and the injury suffered:  SLS's:

1) refusal to accurately and truthfully communicate the status of the loan account;

2) providing false billing and collection letters is misleading Plaintiff as to the status of the loan; and

3) violating the 2MP requirements of MHA;

are all proximate and direct causes of damage to Plaintiff;

e) the Fifth Factor, moral blame of Defendant:  Plaintiff's ability to protect the home from foreclosure is practically nil; and SLS holds all the cards to prevent foreclosure; and the lack of any bargaining power causes this factor to weigh in Plaintiff's favor.

f) the Sixth Factor, policy of preventing future harm:  The passing of new California Foreclosure statutes and the trend in case law holdings that lenders and servicers can be negligent in the foreclosure prevention process and review process demonstrates a rising trend to require lenders to deal fairly, reasonably and in good faith, with borrowers to prevent foreclosure.

32.    SLS violated their duty of care to Plaintiff by their failure to keep accurate records of Plaintiff's loan account, mishandling of the billing to Plaintiff; and failing to explore foreclosure alternatives as it had represented that it would.

33.    As a proximate and foreseeable result of Defendant's breach of duty to Plaintiff, as alleged above, Plaintiff is now facing the prospect of losing her home and having arrears wrongfully accrued against it.

34.    Plaintiff has suffered monetary damages including, but not limited to, increased arrears, out of pocket expenses, and legal and attorneys' fees to bring and maintain the instant

**SECOND AMENDED COMPLAINT**

lawsuit.  Plaintiff has suffered, and will continue to suffer, general and special damages in an

amount according to proof at trial.

## **FOURTH CAUSE OF ACTION**

### **INTENTIONAL MISREPRESENTATION**

### **(Against SLS)**

35.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though such have been fully set forth herein.

36.    The standard for intentional misrepresentation is established by:

 1. A knowingly false representation by the Defendant:  Beginning in 2017, SLS

represented that false amounts were due on the 20% mortgage, including

incorrect: late fees, interest, penalties and past due amounts.  Also, SLS made

false representations that they would allow Plaintiff to submit an application to be

reviewed for an available foreclosure alternative and they would investigate the

accuracy of the CIT Bank email claiming to have discharged the debt.

2. That representation was false:  SLS has not corrected their false billing and has

not investigated the CIT Bank claimed discharge and reconveyance, as SLS had

said they would.  SLS has refused to allow Plaintiff to be reviewed for a

foreclosure alternative.

3. That Defendant knew that their representations were false and made the

representation recklessly and without regard for its truth:  SLS knew, or should

have known, that the subject $62,000.00 debt was claimed to be extinguished by

CIT Bank.  SLS represented to Plaintiff in writings in 2017 and 2018 that they

would explore foreclosure options and yet as of the filing of this complaint they

have  refused to do so.

4. Made with the intent to induce another's reliance on the fact misrepresented:

SLS has mishandled Plaintiff's loan accounts and wrongfully billed her for late

**SECOND AMENDED COMPLAINT**

fees, penalties and interest and principal.  SLS had induced to Plaintiff to believe that she would be assessed for a foreclosure option and have her competent evidence of income reviewed.

5. Reasonable reliance on the representation: Plaintiff reasonably relied on SLS's representations that she would be reviewed her for a foreclosure alternative before any foreclosure conduct took place.

6.  Detrimental reliance and resulting harm:  SLS's concealment of the fact that the principal remained due and provided no explanation as to why CIT would have claimed it discharged the debt. SLS' failure to explore a foreclosure option, as promised and represented would occur, all caused Plaintiff to suffer damages of a destroyed FICO score, the necessity to hire attorneys, and the shock of having a $90,000.00 debt appear from out of nowhere and end up on her credit reports. Plaintiff has had her due process rights violated as she would have been able to avail herself of other remedies had SLS accurately informed her of the status of the subject debt.

7. That the reliance on the omissions and representations was a substantial factor in causing the resulting harm:  Had Plaintiff known that SLS was concealing the accrual of arrears on the $62,000.00 loan, and that SLS would not stop foreclosure conduct until it reviewed her for a foreclosure option, Plaintiff would have pursued other remedies to resolve the damages and problems caused by Defendants' conduct as described herein.

   37.    As a proximate result of SLS's conduct, Plaintiff has suffered general and special damages in an amount to be proven at trial.  Plaintiff will, if necessary, amend this complaint to allege the exact amount of said damages once ascertained.

### FIFTH CAUSE OF ACTION

**VIOLATION OF BUSINESS AND**

**PROFESSIONS CODE SECTIONS 17200, *et seq*.**

**SECOND AMENDED COMPLAINT**

**(Against SLS)**

38.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though such have been fully set forth herein.

39.     California Business & Professions Code Section 17200, et seq., also known as California's Unfair Competition Law (hereinafter the "UCL") prohibits acts of fraudulent, unlawful, or unfair business competition.  Any fraudulent business acts or practices are likely to deceive and are fraudulent within the meaning of the UCL.  Any unlawful business acts or practices are those in violation of some underlying law within the meaning of the UCL.  Any unfair business acts or practices are those that threaten a violation of antitrust law.

40.     A "violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop.  Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (1999). "In effect, the UCL borrows violations of other laws…and makes those unlawful practices actionable under the UCL."  *Lazar v. Hert Corp.*, 69 Cal. App. 4th 1494, 1505 (1999).  In addition, a claim for UCL stands or falls depending on the fate of antecedent substantive causes of action.  *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001).

41.     "Unfair" conduct under the UCL has been commonly defined as conduct that "offends an established public policy or…is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 939 (2003).  When "determining whether the challenged conduct is unfair within the meaning of the unfair competition law…courts may not apply purely subjective notions of fairness."  *Id.* at 941; see also *Cel-Tech Comms. V. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

42.     The unfair practice of Defendant is their conducting of foreclosure activity prior to reviewing Plaintiff for a foreclosure alternative.

43.     Specifically, as fully set forth herein,  SLS engaged in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by, among other things:

a)     Instituting improper or premature foreclosure proceedings to generate

**SECOND AMENDED COMPLAINT**

unwarranted fees ("dual tracking," not conducting a proper review, etc.);

     b)    Executing and recording false and misleading documents;

     c)    Executing and recording documents without the legal authority to do so;

     d)    Misrepresenting the status of the loan account and the status of any foreclosure and foreclosure prevention processes;

     e)    Violating the 2MP requirements of the MHA program; and

     f)    Other deceptive business practices.

     44.    Plaintiff alleges that by engaging in the acts and/or practices as alleged herein, Defendant has violated several California laws and regulations and said predicated acts are, therefore, per se, violations of California Business and Professions Code Section 17200, et seq.

     45.    The foregoing acts and practices of pretending to review borrowers for loan modifications, convincing them that their homes are safe, then springing a foreclosure sale on the borrowers, are not only an unfair business practice, but are also designed to cause substantial harm to California consumers.

     46.    Plaintiff alleges that, as a direct and proximate result of the aforementioned acts, SLS has prospered and benefited from Plaintiff by collecting arrears, late fees and fees for foreclosure related services, and have been unjustly enriched from their act of failing to collect and bill Plaintiff for eleven years.

     47.    Further, Plaintiff alleges that Defendant's misconduct gave, and has given them an unlawful and unfair competitive advantage over their competitors to the detriment of the homeowners.  The scheme implemented by Defendant is designed to defraud California consumers, including Plaintiff, and to enrich Defendant.

     48.    By reason of the foregoing, Defendant has been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed, and/or enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.  Additionally, Plaintiff is

**SECOND AMENDED COMPLAINT**

therefore entitled to injunctive relief and attorney's fees as available under California Business & Professions Code Section 17200 and related sections.

**WHEREFORE**, Plaintiff prays for Judgment and Order against Defendant as follows:

1.      A temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant and their agents, attorneys, and representatives, and all persons acting in concert or participating with them, from selling, attempting to sell, or causing to be sold, Plaintiff's home, either under the power of sale in the deed of trust or by foreclosure action;

2.      That the Court order the Defendant to review Plaintiff for mortgage assistance and/or an assumption, as required by the relevant California statutes;

3.      For the compensatory damages in an amount within the jurisdiction of this court, plus interest, according to proof;

4.      For an award of punitive and exemplary damages in an amount according to proof at the time of trial;

5.      For the disgorgement of all funds taken from Plaintiff and any profits thereafter derived through use of such funds;

6.      For general damages in an amount not less than according to proof at the time of trial;

7.      For prejudgment interest on all damages awarded under Civil Code Section 3287(a);

8.      For costs of suit including reasonable attorneys' fees;

9.      For such other and further relief as the court may deem proper.

**SECOND AMENDED COMPLAINT**

Dated:   April 13, 2020                    LAW OFFICES OF

                                          DENNIS RASMUSSEN


                                          /s/ Dennis Rasmussen
                                          Dennis Rasmussen, Esq.
                                          Attorney for Plaintiff

19 of 19

**SECOND AMENDED COMPLAINT**

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18

and not a party to the within action.  My business address is 750 East Green Street, Suite 333,

Pasadena, California 91101.

On April 13, 2020, I served the following document(s):

**SECOND AMENDED COMPLAINT (CORRECTED)** on the interested parties in this

action:

By transmitting via electronic mail the document listed above to the email address provided by

counsel:

**Name and address of Counsel**

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
MARK G. RACKERS
ANNA S. GOUZOULES
501 West Broadway, 19th Floor
San Diego, California 92101-3598
**Email, Telephone and Fax of Counsel:**
mrackers@sheppardmullin.com
agouzoules@sheppardmullin.com
PH: (619) 338-6500
Fax: 619 234 3815

[  X   ]  VIA ELECTRONIC FILING:  The documents were filed electronically via this court's

CM/ECF system (U.S. District Court, Central District of California Local Civil Rule, 5-3.3) .

Accordingly, service was made by virtue of a Notice of Electronic Filing ("NEF") generated

automatically upon the filing of the document and transmitted to the email addresses of all

counsel of record who have consented to electronic service.  By the terms of the court's rules

governing electronic, filing, service of the documents is deemed complete upon the transmission

of the NEF.

I declare that I am employed in the office of a member of the bar of this Court at whose

direction the service was made under penalty of perjury, under the laws of the State of

California, that the foregoing is true and correct.  Executed on

Executed on April 13, 2020, at  Pasadena, California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Mary Rosendale
Mary Rosendale